Opinion filed September
30, 2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00169-CV 

                                                    __________

 

 

                         WES-TEX
TANK RENTAL, INC., Appellant 

                   V. PIONEER
NATURAL RESOURCES USA, INC., Appellee

 



 

                                   On
Appeal from the 385th District Court

                                                          Midland
County, Texas

                                                  Trial
Court Cause No. CV 44,378

 



 

                                                                  O
P I N I O N

 

            Wes-Tex
Tank Rental, Inc. sued Pioneer Natural Resources USA, Inc. alleging that it
breached a contract by refusing to honor Wes-Tex’s right of first refusal for
frac tank rentals in West Texas.  The trial court held that Wes-Tex’s damage
claims were barred by a preexisting master service agreement, and it granted
Pioneer’s motion for directed verdict.  We affirm.

I.  Background
Facts

Wes-Tex rents frac tanks.  On July 5, 2000, Pioneer and Wes-Tex entered
into a “Master Service/Sales Agreement” (MSA).  The MSA contained general terms
that governed the business relationship between the two parties, but it did not
require Pioneer to rent any frac tanks or West-Tex to furnish any tanks.  The
MSA contained a specific provision that prohibited superseding agreements
absent a specific waiver process.  Pioneer was engaged in capital intensive
projects elsewhere, and in an effort to budget its Permian Basin operations, it
asked vendors to agree to a three-year price freeze.  In response, Wes-Tex sent
Pioneer a letter that read:

Wes-Tex
Tank Rental, Inc. will guarantee our current rates on Frac Tank Rental on new
completions and or work-overs of all wells in the West Texas Sprayberry area
for the next 36 months.

 

If
this agreement is accepted, Wes-Tex Tank Rental, Inc. will have first right of
refusal on all frac tank work in the Sprayberry area.

 

Pioneer accepted
the proposal and countersigned the letter.

Several
months later, Pioneer began complaining to Wes-Tex about the condition of its
tanks.  Pioneer was unsatisfied with Wes-Tex’s response, and on November 25,
2002, it notified Wes-Tex that their relationship was terminated.  Wes-Tex sued
Pioneer alleging that it had breached the MSA as amended by the letter agreement.[1] 
The parties filed cross motions for summary judgment.  Pioneer argued that the letter
agreement was not enforceable because it was contrary to the MSA[2]
and because it did not provide for mutuality of obligation.  The trial court
ruled that the letter agreement was not a valid contract, and it entered
judgment for Pioneer.  Wes-Tex appealed and argued that the letter agreement
was a valid contract and that it modified 
the MSA.  We agreed with Wes-Tex, found that the letter agreement was a valid
contract, and sustained Wes-Tex’s first three issues.[3]

The
case was remanded, and it proceeded to trial.  Pioneer objected to Wes-Tex’s lost
profits evidence, contending that the MSA barred their recovery.  Pioneer also
objected to any evidence of attorney’s fees because there was no evidence of
actual damages.  Wes-Tex responded that the MSA was no longer enforceable and
that the only contract between the two parties was the letter agreement.  In
support of this argument, it referenced a statement in our prior opinion
describing the letter agreement as a valid contract.  Wes-Tex contended that
this statement constituted a holding that the letter agreement did not amend
the MSA but replaced it. The trial court disagreed and sustained Pioneer’s objections. 
Pioneer then moved for a directed verdict, arguing that Wes-Tex had offered no
evidence of damages.  The trial court granted that motion and entered judgment
for Pioneer.

II.  Issues and Standard of Review

Wes-Tex challenges the trial court’s judgment with three issues.  Wes-Tex
argues that the trial court erred by granting the motion for directed verdict
because there was an unresolved question of material fact, because the trial
court misapplied this court’s prior holding, and because the MSA did not bar
Wes-Tex’s claim for breach of the letter agreement.

A directed verdict is proper in two situations.  Prudential Ins. Co.
of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  First, a
trial court may direct a verdict when a plaintiff fails to present evidence
raising a fact issue essential to its right of recovery.  Id.  Second, a
trial court may direct a verdict for the defendant if the plaintiff admits or
the evidence conclusively establishes a defense to the plaintiff’s cause of
action.  Id.  In reviewing the granting of a directed verdict, we apply
the same standard of review as we do when assessing a no-evidence or legal
sufficiency challenge.  City of Keller v. Wilson, 168 S.W.3d 802, 823
(Tex. 2005).  We may uphold a directed verdict only when (1) the record
discloses a complete absence of a vital fact, (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, (3) the only evidence offered to prove a vital fact is no more
than a mere scintilla, or (4) the evidence conclusively establishes the
opposite of a vital fact.  Id. at 810.

III.  Can Wes-Tex Recover Lost Profits?

Wes-Tex
reads our prior opinion too broadly.  The only question before this court was whether
the letter agreement was enforceable.  Because the MSA did not require Pioneer
to rent any tanks from Wes-Tex and because the parties did not follow the
procedure outlined in paragraph two of the MSA when they entered into the letter
agreement, it was necessary for us to determine whether this lack of procedure
precluded the imposition of a right of first refusal.  It was unnecessary for us
to determine what effect the letter agreement had on any other provision of the
MSA. Indeed, Wes-Tex did not argue in the first appeal that the letter agreement
superseded the MSA but only that it amended it.  When we agreed with Wes-Tex
and found that the letter agreement was a valid contract, we found that the
promises made in that agreement were enforceable.  We did not hold that the
entire MSA had been replaced.

The
MSA is a comprehensive agreement that covers numerous issues, most of which are
not implicated by the letter agreement.  The MSA did not limit Wes-Tex’s
ability to raise its prices or require Pioneer to rent any of their tanks, but
when the parties entered into the letter agreement, they altered both privileges. 
They did not, however, alter any other contractual right or obligation.  In
fact, Wes-Tex’s trial testimony confirmed that the MSA was otherwise
unaffected.  The parties’ dispute centered over concerns that Wes-Tex’s tanks
were not in compliance with OSHA regulations.  Randy Brookings, Wes-Tex’s
corporate representative, agreed that, under the MSA, it was his obligation to
supply OSHA compliant equipment. Brookings did not contend that, because of the
letter agreement, he was no longer bound by this requirement but, instead, testified
that the letter agreement was an additional contract above and beyond the MSA
and that, after signing the letter agreement, the parties continued doing things
the way that they always had.

A
modification to a contract creates a new contract.  Boudreaux Civic Ass’n v.
Cox, 882 S.W.2d 543, 547-48 (Tex. App.—Houston [1st Dist.] 1994, no writ). 
The new contract includes the new, modified provisions and the unchanged old
provisions.  Greenbelt Elec. Coop., Inc. v. Johnson, 608 S.W.2d 320,
324-25 (Tex. Civ. App.—Amarillo 1980, no writ); see also BACM 2001-1 San
Felipe Rd. Ltd. P’ship v. Trafalgar Holdings I, Ltd., 218 S.W.3d 137, 146
(Tex. App.—Houston [14th Dist.] 2007, pet. denied) (a modification alters only
those terms of the original agreement to which it refers, leaving intact those
unmentioned portions of the original agreement that are not inconsistent with
the modification).  Wes-Tex contends that whether the letter agreement was a
modification of the MSA was a fact question.  However, the letter agreement is
unambiguous, and its language supports no construction other than a limitation
of Wes-Tex’s right to raise prices and the imposition of a right of first
refusal upon Pioneer.  Moreover, Wes-Tex points to no trial testimony creating
a fact question on the intention of the parties.  Consequently, the trial court
did not err when it found that the letter agreement modified but did not
supersede the MSA.  Because the MSA prohibits the recovery of lost profits, the
trial court did not err when it excluded Wes-Tex’s lost profits evidence.

The
trial court asked counsel what damage issue would be submitted to the jury.  Wes-Tex
responded that it would tender a lost profits issue.  In fact, no other actual
damage issue was included in Wes-Tex’s proposed charge.  Wes-Tex does not
contend that it offered evidence of any other form of damage but argues that
there must be a remedy for Pioneer’s breach of contract and that, if lost
profits are not recoverable, then it has no remedy.  If we assume that Pioneer
breached the letter agreement, then Wes-Tex could not obtain the full benefit
of that agreement without recovering its lost profits, but there are other
forms of contractual damages.[4] 
Thus, it is not accurate to say that Wes-Tex has no remedy.  If Wes-Tex is
precluded from recovering lost profits, then it may be prevented from
recovering the full extent of its damages.  However, it is significant to note
that the damage limitation provision was reciprocal.  If Wes-Tex’s equipment or
personnel damaged a Pioneer well, Wes-Tex was shielded from potentially
significant exposure by this same provision.  Thus, while neither party was
guaranteed full recovery of any contractual damages, both parties faced less
exposure than they would have otherwise.

The
MSA barred any claim for lost profits.  Because Wes-Tex offered no other
evidence of actual damages and because in the absence of actual damage Wes-Tex
was not entitled to attorney’s fees,[5]
the trial court did not err when it granted Pioneer’s motion for directed
verdict.

IV.  Conclusion

Wes-Tex’s issues are each overruled.  The judgment of the trial court is affirmed.

 

            

RICK STRANGE

                                                                                    JUSTICE

 

September 30,
2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Wes-Tex contended that the letter agreement preempted
the MSA to the extent of any conflicting provisions and that, if the MSA was a
contract, then “the Letter Agreement modified it.”

 





                [2]Specifically, Pioneer argued that the letter agreement
was unenforceable because of the following MSA provision:

 

This Agreement shall control and govern as to all goods
and services provided by Contractor for Company from and after its effective
date.   Neither verbal agreements or representations, nor written work orders,
delivery tickets or any other written instruments used by Contractor or Company,
shall become a part of any contract between Company and Contractor for any
purpose other than to describe the goods and services to be performed by
Contractor for Company and to designate the time at which said goods and
services are to be delivered or performed.  All offers and acceptances by and
between Contractor and Company while this Agreement is in effect are expressly
limited to and conditioned upon the parties’ agreement to the terms of this
Agreement.  Should the parties desire to waive this provision, and agree that
terms and provisions different from, or in addition to, those set out in this
Agreement should be applicable to specified goods or services to be provided by
Contractor, such waiver and agreement shall only be enforceable if contained
in, or reflected by, a separate written instrument, signed by each of the
parties, expressly referencing this Agreement and acknowledging and confirming
the intention of the parties that same supersede and take priority over the
terms and provisions of this Agreement.

 





 

                [3]See Wes-Tex Tank Rental, Inc. v. Pioneer Natural
Resources USA, Inc., No. 11-05-00396-CV, 
2007 WL 1026431 (Tex. App.—Eastland Apr. 5, 2007, no pet.) (mem. op.). 
Wes-Tex’s first three issues were: (1) Is the letter agreement a contract? (2)
Does Texas law allow Wes-Tex and Pioneer to modify Pioneer’s Master
Service/Sales Agreement by the letter agreement? (3) Did the letter agreement
constitute a modification of the Master Service/Sales Agreement consistent with
the terms of Article 2A.208?





                [4]Damages
for breach of contract protect three interests:  a restitution interest, a
reliance interest, and an expectation interest.  O’Farrill Avila v. Gonzalez,
974 S.W.2d 237, 247 (Tex. App.—San Antonio 1998, pet. denied).  Wes-Tex’s lost
profits claim falls into the third category because it seeks to achieve the
economic position Wes-Tex would have enjoyed but for the breach of contract.  See
Qaddura v. Indo-European Foods, Inc., 141 S.W.3d 882, 888-89 (Tex.
App.—Dallas 2004, pet. denied) (expectation damages are benefit of the bargain
damages that restore the non-breaching party to the same position it would have
been in had the contract not been breached).  Reliance damages restore any
expenditures the non-breaching party made in reliance on the contract.  Mistletoe
Express Serv. of Okla. City, Okla.  v. Locke, 762 S.W.2d 637, 638-39 (Tex.
App.—Texarkana 1988, no writ).  Restitution damages restore property or money
taken from the non-breaching party and restore it to the position it would have
been in had no contract been made.  City of Harker Heights, Tex. v. Sun
Meadows Land, Ltd., 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ). 
Nominal damages may also be awarded for a breach of contract.  MBM Fin.
Corp. v. Woodlands Operating Co., 292 S.W.3d 660, 664-65 (Tex. 2009).  In
that instance, the prevailing party may also be entitled to attorney’s fees
under Tex. Civ. Prac. & Rem. Code
Ann. § 38.001 (Vernon 2008).  See
MBM Fin., 292 S.W.3d at 666 (noting the possibility of an
attorney’s fee award upon proof of nominal damage but not reaching the question
because the plaintiff could recover neither actual nor nominal damages).





                [5]See MBM Fin.,
292 S.W.3d at 666 (to recover attorney’s fees under Section 38.001, a party
must prevail on a breach of contract claim and recover damages).